1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   JESSICA OLIVE,                    CASE NO. SACV 17-1765 SS

12                    Plaintiff,

13        v.                           **MEMORANDUM DECISION AND ORDER**

14   NANCY A. BERRYHILL, Acting
     Commissioner of Social
15   Security,

16                    Defendant.

17

18                              **I.**

19                        **INTRODUCTION**

20

21        Jessica Olive ("Plaintiff") brings this action seeking to

22   overturn the decision of the Acting Commissioner of Social Security

23   (the "Commissioner" or "Agency") denying her application for

24   Disability Insurance Benefits.  The parties consented, pursuant to

25   28 U.S.C. § 636(c), to the jurisdiction of the undersigned United

26   States Magistrate Judge.  (Dkt. Nos. 11-13).  For the reasons

27   stated below, the Court AFFIRMS the Commissioner's decision.

28

## II.

### PROCEDURAL HISTORY

On June 17, 2014, Plaintiff filed an application for Disability Insurance Benefits, pursuant to Title II of the Social Security Act ("Act"), alleging a disability onset date of September 9, 2013. (AR 85, 141-44). The Commissioner denied Plaintiff's application initially and on reconsideration. (AR 76-95). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on September 29, 2015.[1] (AR 30-75, 105-06). The ALJ issued an adverse decision on February 22, 2016, finding that Plaintiff was not disabled because there are jobs in the national economy that she can perform. (AR 17-25). On August 17, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-6). This action followed on October 10, 2017.

## III.

### FACTUAL BACKGROUND

Plaintiff was born on February 27, 1984. (AR 141). She was thirty-one (31) years old when she appeared before the ALJ on July 26, 2016. (AR 39). Plaintiff is a high-school graduate and has an associate's degree. (AR 40). She is single and lives with her parents. (AR 61, 169, 183). Plaintiff last worked in September

---

[1] Plaintiff was unrepresented at the hearing. The ALJ appraised Plaintiff of the right to be represented by an attorney, but she elected to proceed without representation. (AR 32-36).

2013 as a receptionist. (AR 65, 161). She alleges disability due to anxiety, panic attacks, and severe depression. (AR 160).

**A.** **Plaintiff's Statements and Testimony**

On June 28, 2014, Plaintiff submitted an Adult Function Report. (AR 169-77). She asserted that she is unable to work due to severe panic attacks that cause extreme dizziness, shaking, nausea, diarrhea, inability to focus, anxiety, paranoia, and sleep disturbances. (AR 169-70). Plaintiff also asserted that her mental impairments affect her vision and her ability to memorize and concentrate. (AR 174). Plaintiff is able to exercise, read, write, listen to music, and go outside. (AR 170). She has no problems with personal care, including dressing, bathing, taking her medications, and feeding herself. (AR 170-71). Plaintiff is able to prepare meals, do house and yard work, and care for her dog. (AR 170-71). She occasionally drives and shops in stores. (AR 172). Plaintiff's hobbies and interests include occasional reading, writing, watching television, blogging, photography and playing baseball. (AR 173). She regularly socializes with friends and family, with no problems getting along with others. (AR 173-74).

In an August 2014 Disability Report, Plaintiff asserted that her panic attacks prevent her from doing everyday activities. (AR 223). The stresses of work created issues where she could not breathe or think, would get dizzy and nauseous, and would have severe diarrhea. (AR 223). She has severe problems talking on

the phone and going outside and interacting with people because of her panic attacks and anxiety. (AR 223).

At Plaintiff's hearing, she testified that she is unable to work because of symptoms related to anxiety, depression, and PTSD. (AR 57). Social functions, being on the phone, and looking for work exacerbate her panic attacks. (AR 57). She suffers from significant anxiety, which causes diarrhea, shaking, and an inability to think. (AR 57). She has made some progress with her recent therapist. (AR 53-55). While Prozac and Zyprexa have helped her depression significantly, they affect her memory and cause headaches. (AR 56-58). Plaintiff testified that she tries to help out around the house when her anxiety is under control. (AR 61-62).

**B.**    **Treatment History**

Plaintiff sought treatment with Kaiser in Salem, Oregon, since July 2013. (AR 264). On July 11, 2013, Plaintiff complained of increase anxiety associated with job stressors. (AR 264). She reported trying to find a new job. (AR 284). She reported being overly tearful, difficulty breathing, and nausea. (AR 264). She was diagnosed with an adjustment disorder with mixed anxiety and depression and prescribed Prozac. (AR 264-65). On July 18, Plaintiff reported worsening anxiety and stress, with eye twitching and intermittent chest tightness. (AR 266). On September 19, Plaintiff reported that her depression was improving, but anxiety

was still present. (AR 267). She was diagnosed with panic disorder without agoraphobia and major depressive disorder. (AR 263).

On September 10, 2013, Barbara Hoover, D.O., Plaintiff's primary care doctor, diagnosed generalized anxiety disorder and prescribed Ativan to relieve Plaintiff's panic symptoms at work. (AR 277). On September 19, Plaintiff reported her depression as improving but anxiety is still present. (AR 277). She reported being on short-term disability due to her panic attacks. (AR 277). Dr. Hoover recommended that she continue off work until her depression and anxiety stabilized. (AR 277). On October 3, Plaintiff reported a decrease in panic attacks. (AR 276).

On September 12, 2013, Plaintiff began treating with New Perspectives Center for individual psychotherapy. (AR 297). She reported high anxiety, panic attacks, and depression. (AR 298). Recurrent panic attacks cause extreme distress and have impaired her ability to work. (AR 298). Although Plaintiff reported recent suicidal thoughts, she denied any plans or intent. (AR 298). Her anxiety and depression symptoms include nightmares, sleep disturbance, exaggerated startle response, depressed mood, weight loss/gain, anhedonia, severe psychomotor agitation, feelings of worthlessness, low self-esteem, poor appetite, muscle tension, irritability, fatigue, panic attacks, excessive worry, difficulty concentrating, and difficulty sustaining attention. (AR 300-01). Plaintiff was diagnosed with panic disorder without agoraphobia and major depressive disorder and assigned a Global Assessment of

Functioning ("GAF") score of 45.[2]  (AR 297).  Plaintiff continued with weekly individualized psychotherapy sessions during September and October 2013.  (AR 313-21).  On September 26, Plaintiff reported actively applying for jobs working in customer service.  (AR 319).  On October 30, Plaintiff reported dealing with anxiety better.  (AR 313).

In October 2013, Plaintiff began treating with Sarah Dubal, a psychiatric mental health nurse practitioner.  (AR 270-72).  Plaintiff complained of severe depression and some anxiety.  (AR 270).  A mental status examination was unremarkable.  (AR 270).  Dubal diagnosed adjustment disorder with disturbance of mood and anxiety and transitioned Plaintiff from Prozac to Zoloft.  (AR 270-71).  Three weeks later, Plaintiff complained that she feels worse with Zoloft, except panic attacks are only about every three days.  (AR 270).  Dubal suggested Plaintiff try 5-HTP as an alternative

---

[2]  "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."  Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).  The GAF includes a scale ranging from 0-100, and indicates a "clinician's judgment of the individual's overall level of functioning."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (hereinafter DSM-IV).  According to DSM-IV, a GAF score between 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning."  Id. 34.  "Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement."  Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014).

for her.[3]  On November 11, Plaintiff reported feeling better with 5-HTP than either Prozac or Zoloft, although the 5-HTP was helping more with depression than anxiety.  (AR 269).  A mental status examination was unremarkable.  (AR 269).

In January 2014, Plaintiff began treating with Clarissa J. Shepherd, a licensed professional counselor.  (AR 328).  Plaintiff reported panic attacks, including unfocused vision, loss of breath, shaking, nausea, uncontrolled crying, and diarrhea.  (AR 329).  A mental status examination was unremarkable.  Plaintiff was fully oriented and her affect, appearance, speech, attention, concentration, memory, mood, thought content, insight, judgment and intellectual functioning were all normal.  (AR 329-30).  There were no signs of hallucinations or delusions.  (AR 330).  Shepherd diagnosed major depressive disorder and generalized anxiety disorder and assigned a GAF score of 50.  (AR 332).  Plaintiff continued with individualized, weekly therapy sessions from January to May 2014.  (AR 333-41).  In February 2014, Plaintiff reported feeling better and being able to engage in a variety of activities, including walking her dog on a daily basis and enjoying a variety of social interactions.  (AR 337-38).  Over the course of her treatment, Plaintiff reported that her symptoms of anxiety and depression decreased as she followed through with her treatment

---

[3]  5-HTP is an herbal remedy that "increases the synthesis of serotonin [and] is used for several diseases where serotonin is believed to play an important role including depression, insomnia, obesity, and many other conditions."  <https://www.webmd.com/vitamins/ai/ingredientmono-794/5-htp> (last visited August 3, 2018).

plan.  (AR 326).  On July 18, 2014, Shepherd opined that Plaintiff is unable to perform required workplace duties, such as sustaining concentration or being able to socially interact and adapt to workplace situations and environment.  (AR 327).

On July 17, 2014, Sohini P. Parikh, M.D., reviewed the medical record and performed a complete psychiatric evaluation on behalf of the Commissioner.  (AR 343-50).  Plaintiff was casually dressed and reasonably groomed with a normal posture and gait.  (AR 343).  Her chief complaints were depression, anxiety, and "medical problems."  (AR 343).  She reported feeling depressed and frustrated due to the situation at her workplace beginning in July 2013.  (AR 344).  Plaintiff claimed she was "picked on and given a hard time at work."  (AR 344).  She reported anxiety attacks with increased heart rate, sweatiness, and dizzy spells.  (AR 344).  Big crowds "bother her a lot."  (AR 344).  She denied any psychosis or any suicidal or homicidal ideations.  (AR 344).  Plaintiff is able to drive, manage funds, and pay bills.  (AR 346).  She is able to cook, shop, and do housekeeping.  (AR 346).  Plaintiff cares for herself and her dog.  (AR 346).  She has close friends, gets along with her family, and has no problems with her neighbors.  (AR 346).

Dr. Parikh conducted a mental status examination.  (AR 346-48).  Plaintiff was alert, attentive, cooperative, and followed simple oral and written instructions.  (AR 346).  No cognitive problems were noted.  (AR 346).  Plaintiff's speech was normal, she was fully oriented, with logical form of thought, and normal thought content.  (AR 347).  Plaintiff's mood was depressed and

8

anxious and her affect was "brighter." (AR 347). She denied any feelings of hopelessness, helplessness, anhedonia, or worthlessness. (AR 347). She denied hallucinations, delusions, phobias, or any preoccupations with suicidal or homicidal ideations. (AR 347). Plaintiff's abstract thinking, judgment, insight, memory, and intellectual functioning were all unremarkable. (AR 347-48).

Dr. Parikh diagnosed anxiety disorder and depressive disorder and assigned a GAF score of 66 to 71.[4] (AR 349). She opined that Plaintiff might have a mild impairment in the ability to reason and to make social, occupational, and personal adjustments. (AR 349). Specifically, Dr. Parikh concluded that Plaintiff has no mental restrictions in daily activities; mild mental difficulties in maintaining social functioning; no impairments with concentration, persistence, or pace; mild episodes of emotional deterioration in work-like situations; no impairment in understanding, carrying out, and remembering simple instructions; mild impairment in understanding, carrying out, and remembering complex instructions; mild impairment in responding to coworkers,

---

[4]   According to DSM-IV, a GAF score between 61 and 70 indicates some mild symptoms (e.g., depressed mood and mild insomnia or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within household), but generally functioning well, has some meaningful interpersonal relationships. DSM-IV 34. A GAF score between 71 and 80 indicates that if symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork). Id.

supervisors, and the general public; mild impairment in responding appropriately to usual work situations; and mild impairment in dealing with changes in a routine work setting. (AR 349-50).

In July 2014, Plaintiff moved to California to live with her parents but did not begin treatment until January 2015. (AR 326, 356, 393). At her initial intake at Kaiser in Anaheim, California, Plaintiff complained of anxiety and depression. (AR 356). Her reported symptoms included tearfulness, anhedonia, fluctuating weight, insomnia, irritability, fatigue, feeling worthless, reduced concentration and memory, panic, lack of consistent motivation, and conflict with friends. (AR 357-58). She denied psychosis and homicidal or suicidal ideations. (AR 358). A mental status examination was largely unremarkable. (AR 359). Although her mood was depressed and anxious, her appearance, behavior, affect, motor activity, speech, orientation, alertness, memory, insight, judgment, thought form, and thought content were all normal. (AR 359). Plaintiff was diagnosed with major depression and panic disorder and assigned a GAF score of 51 to 60.[5] (AR 360). Her condition fluctuated with weekly therapy sessions and treatment. In February, Plaintiff presented with an anxious and depressed mood and a tearful affect. (AR 372). Other than an anxious and depressed mood, a mental status examination on February 20, 2015, was unremarkable. (AR 395-96). Nancy Lee Tram Dom,

---

[5]   A GAF score between 51 and 60 indicates moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM-IV 34.

M.D., diagnosed bipolar II disorder and panic disorder and assigned a GAF score of 55. (AR 397). Dr. Dom prescribed Seroquel and recommended that Plaintiff continue individual psychotherapy. (AR 397). On February 25, Plaintiff reported that Seroquel "has helped her significantly." (AR 410). She feels happier, less anxious, and more able to use coping skills. (AR 410). A mental status examination was unremarkable. (AR 410).

On March 19, 2015, Plaintiff was "feeling a little tired, but pretty good." (AR 434). She reported working on wedding plans for her friend. (AR 434). Other than an anxious and depressed mood, a mental status examination was unremarkable. (AR 423). Dr. Dom discontinued Seroquel due to concerns about cardiac side effects and started Risperdal. (AR 423-24). On March 27, Plaintiff reported side effects of headaches and dizziness. (AR 441). She also reported that anxiety and mood symptoms have worsened significantly since tapering off of Seroquel. (AR 441). On examination, Plaintiff's mood was anxious and depressed and her affect restricted and congruent. (AR 442). Dr. Dom diagnosed bipolar I disorder and panic disorder and assigned a GAF score of 50 to 55. (AR 442). Dr. Dom discontinued Risperdal and started Trileptal. (AR 442). On April 22, Plaintiff reported that Trileptal was ineffective at controlling either her anxiety or her depression. (AR 452). Dr. Dom discontinued Trileptal and started Abilify. (AR 453).

On May 6, 2015, Plaintiff reported anxiety when looking online for jobs. (AR 464). On May 12, Plaintiff reported side effects

of occasional hand tremors and restlessness and no significant improvements in mood with Abilify. (AR 471). Plaintiff is making an effort to engage in social activities, including attending church functions. (AR 471). Dr. Dom discontinued Abilify due to the side effects and started Latuda. (AR 472). On May 28, Plaintiff reported that she had stopped Latuda due to side effects of palpitations and chest pressure and was taking herbal medications. (AR 487). Her depression is better but she experiences almost daily panic attacks. (AR 487). Plaintiff is able to engage in social activities and will be going to Utah to help her grandmother move into nursing home for three weeks beginning in June. (AR 487, 502). Other than an anxious mood and a restricted and congruent affect, a mental status examination was unremarkable. (AR 488). On July 17, Plaintiff reported that she has been more stable with herbal medications. (AR 509). She has mood swings but is generally able to control them. (AR 509). Other than an anxious mood and a restricted and congruent affect, a mental status examination was normal. (AR 510). Dr. Dom diagnosed bipolar I disorder and panic disorder, prescribed hydroxyzine, and assigned a GAF score of 55. (AR 510). On September 1, Plaintiff reported that she had stopped hydroxyzine because it caused her to be too sedated the next day. (AR 532). Because her depression has worsened and she was experiencing daily panic attacks, Plaintiff was open to trying psychotropic medications. (AR 532). Other than an anxious and depressed mood and a restricted and congruent affect, a mental status examination was unremarkable. (AR 533). Dr. Dom prescribed Zyprexa and Prozac. (AR 534).

## C.    State Agency Consultants

On August 12, 2014, Pamela Hawkins, Ph.D, a state agency consultant, evaluated the mental health records and concluded that Plaintiff's anxiety and depression are nonsevere. (AR 81). She opined that Plaintiff has a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. (AR 81). Dr. Hawkins concluded that Plaintiff's mental impairments do not significantly limit her ability to do basic work activities. (AR 82). On September 3, 2014, R.E. Brooks, M.D., concurred with Dr. Hawkins's assessment. (AR 90-92).

## IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1)     Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2)     Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3)     Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4)     Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5)     Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an

14

affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 17-25). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 9, 2013, her alleged onset date. (AR 19). At step two, the ALJ found that Plaintiff's bipolar disorder,

15

anxiety disorder, and panic disorder are severe impairments.[6]  (AR 19).  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations.  (AR 20-21).

The ALJ then assessed Plaintiff's RFC and concluded that she can perform a full range of work at all exertional levels but with the following nonexertional limitations: "she is limited to work involving simple[,] repetitive tasks; she is limited to work involving no more than occasional contact with coworkers; and she is limited to work involving no public contact."  (AR 21).  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  (AR 23-24).  Based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including packager and assembler.  (AR 24-25).  Accordingly, the ALJ found that Plaintiff was not under a disability, as defined by the Social Security Act, from September 9, 2013, through the date of the decision.  (AR 25).

---

[6]   The ALJ found that Plaintiff's medically determinable impairments of asthma and severe obesity do not cause more than minimal limitations in Plaintiff's ability to perform basic work activities and are, therefore, nonsevere.  (AR 19).  The ALJ also found that Plaintiff's alleged fibromyalgia is not a medically determinable impairment.  (AR 19-20).

# VI.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  _Garrison v. Colvin_, 759 F.3d 995 (9th Cir. 2014) (citing _Stout v. Comm'r, Soc. Sec. Admin._, 454 F.3d 1050, 1052 (9th Cir. 2006)); _Auckland v. Massanari_, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing _Tackett_, 180 F.3d at 1097); _Smolen v. Chater_, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing _Fair v. Bowen_, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance."  _Reddick_, 157 F.3d at 720 (citing _Jamerson v. Chater_, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  _Id._ (citing _Jamerson_, 112 F.3d at 1066; _Smolen_, 80 F.3d at 1279).  To determine whether substantial evidence supports a finding, the court must " 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.' "  _Auckland_, 257 F.3d at 1035 (citing _Penny v. Sullivan_, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner.  _Reddick_, 157 F.3d at 720-21 (citing _Flaten v. Sec'y_, 44 F.3d 1453, 1457 (9th Cir. 1995)).

Plaintiff asserted that she is unable to work due to severe panic attacks that cause extreme dizziness, shaking, nausea, diarrhea, inability to focus, anxiety, paranoia, and insomnia. (AR 57, 169-70, 223). She also asserted that her mental impairments affect her vision, memory, and concentration. (AR 174). Plaintiff testified that social functions, being on the phone, and looking for work exacerbate her panic attacks. (AR 57).

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Garrison, 759 F.3d at 1014. "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (emphasis in original) (citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Trevizo, 871 F.3d at 678 (citation omitted);

see also <u>Smolen</u>, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." <u>Garrison</u>, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

<u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1137 (9th

Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137.  However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted).  Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it."  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ provided multiple, specific, clear, and convincing reasons, supported by evidence in the record, to find Plaintiff's complaints of disabling anxiety, panic attacks, and mental

symptomology only partially credible. (AR 30). These reasons are sufficient to support the Commissioner's decision.[7]

First, the ALJ found that Plaintiff's statements were internally inconsistent. (AR 23). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); see Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) ("ALJ may engage in ordinary techniques of credibility evaluation, such as . . . inconsistencies in claimant's testimony"); accord 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). In an August 2014 Disability Report, Plaintiff asserted that she cannot go outside and interact with people because of her anxiety. (AR 223). Plaintiff testified that social functions, being out in public, and looking for work exacerbate her panic attacks. (AR 57-58, 63). She acknowledged to her therapist, however, that she is able to engage in a variety of activities, including walking her dog on a daily basis, inviting

_____

[7] Plaintiff contends that "the ALJ simply sets forth the oft rejected boilerplate language numerous courts have rejected as boilerplate." (Dkt. No. 19 at 7). Indeed, the Ninth Circuit has noted with disfavor that "ALJs with frequency include the boilerplate language discrediting the claimant's symptom testimony because it is 'inconsistent with' the RFC in their disability determinations." Laborin v. Berryhill, 867 F.3d 1151, 1154 (9th Cir. 2017) (citation omitted). However, "[b]ecause the claimant's symptom testimony must be taken into account when the ALJ assesses the claimant's RFC, it cannot be discredited because it is inconsistent with that RFC." Id. Nevertheless, the error is harmless where the ALJ, as he did here (AR 21-23), also gives specific and valid reasons supported by substantial evidence for rejecting the claimant's subjective statements. Laborin, 867 F.3d at 1154 ("inclusion of this flawed boilerplate language is not, by itself, reversible error and can be harmless").

friends over to her home, and other social activities. (AR 23, 337-38). Plaintiff also acknowledged planning a friend's wedding, attending church, and travelling to Utah to help her grandmother transition into a nursing home, at trip which took three weeks. (AR 23, 434, 471, 487, 502). Plaintiff reported to Dr. Parikh that she is able to drive, shop and engage in social activities with family, friends, and neighbors. (AR 346). The ALJ properly concluded that "these inconsistencies . . . diminish [Plaintiff's] credibility." (AR 23).

Second, Plaintiff's allegations were inconsistent with her acknowledged activities of daily living. (AR 23). "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016. Nevertheless, an ALJ properly may consider the claimant's daily activities in weighing credibility. Tommasetti, 533 F.3d at 1039. If a claimant's level of activity is inconsistent with the claimant's asserted limitations, it has a bearing on credibility. Garrison, 759 F.3d at 1016. Here, Plaintiff asserted that her panic attacks prevent her from even doing everyday activities. (AR 223). She testified that her anxiety and panic attacks cause significant problems with memory and concentration. (AR 56-59, 62-63; see id. 174). Nevertheless, Plaintiff acknowledged performing independent personal care, including dressing, bathing, and taking her medications, caring for her dog, doing housework,

and preparing meals. (AR 23, 170-72). She reported to Dr. Parikh that she is able to manage funds, pay bills, cook, do housekeeping, and care for herself and her dog. (AR 346). These acknowledged activities of daily living belie Plaintiff's assertions of debilitating symptoms.

Plaintiff contends that "[e]vidence that a claimant can participate in basic human function 'is not determinative of disability.' " (Dkt. No. 19 at 10) (quoting Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989)). Indeed, "[h]ouse chores, cooking simple meals, self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as well as occasional shopping outside the home, are not similar to typical work responsibilities." Diedrich v. Berryhill, 874 F.3d 634, 643 (9th Cir. 2017). The ALJ, however, was not citing Plaintiff's activities of daily living for the proposition that these activities are readily "transferable to a work environment." Ghanim, 763 F.3d at 1165. Instead, the ALJ found that Plaintiff's activities of daily living undermined her subjective statements of severe, debilitating symptoms. See id. ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

Third, the ALJ found that Plaintiff's acknowledged work search contradicts her allegation of disabling panic attacks and other symptoms. (AR 23). Throughout the medical record, Plaintiff reported that she was applying and looking for work. (AR 284, 319, 464). The ALJ properly concluded that Plaintiff's actions were

inconsistent with being disabled from all types of employment.  (AR 23); see Bray, 554 F.3d at 1227 (in reaching a credibility determination, ALJ may consider Plaintiff's work record, including employment searches); Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (when assessing subjective complaints, ALJ may consider Plaintiff's enrollment in training course, attempts to seek work, and failure to find work because of economic slowdown).  Further, Plaintiff's active work search is inconsistent with her allegations that her mental impairments preclude her from engaging in social functions, using the phone, being out in public, and interacting with people.  (AR 21, 23; see id. 57-58, 223).

Plaintiff argues that "[a]ll [Plaintiff's job search] demonstrates is that the stress of working or looking for work in hopes of being able to work again one day is consistent with [her] testimony."  (Dkt. No. 19 at 13).  The ALJ found, however, that Plaintiff's acknowledged job search activities contradict her statements that she is unable to be on the phone and interact with people.  (AR 21, 23).  Further, as Plaintiff acknowledged in her brief, she "reported in July 2013 that her current job was causing her stress and she was looking for a new job."  (Dkt. No. 19 at 12).  This is consistent with the ALJ's finding that Plaintiff cannot perform any past relevant work but that there are simple, repetitive jobs, with no more than occasional contact with coworkers and no public contact, in the national economy that she can perform.  (AR 21-25).

Fourth, the ALJ found that Plaintiff's allegations of disabling anxiety, chronic panic attacks, and severe depression were inconsistent with the objective medical evidence, which indicated that "[h]er condition waxed and waned with treatment." (AR 21-22). While inconsistencies with the objective medical evidence cannot be the sole ground for rejecting a claimant's subjective testimony, it is a factor that the ALJ may consider when evaluating credibility. Bray, 554 F.3d at 1227; Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857; see SSR 16-3p, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"). After treating with New Perspectives Center for six weeks, Plaintiff reported dealing with anxiety better. (AR 313). In October and November 2013, while trying various medications, mental status examinations were unremarkable. (AR 269-72). After individualized, weekly therapy sessions during January through July 2014, Plaintiff reported feeling better and being able to engage in activities of daily living, including walking her dog and enjoying a variety of social interactions. (AR 337-38). She acknowledged that her symptoms of anxiety and depression decreased as she followed through with the treatment plan. (AR 326). After moving to California, a mental status examination in January 2015 was largely unremarkable. (AR 359). Although her mood was depressed and anxious, her appearance, behavior, affect, motor activity, speech, orientation, alertness, memory, insight, judgment, thought form, and thought content were all normal. (AR 359). Thereafter, her condition fluctuated with

weekly therapy sessions and treatment. (AR 372-534). Various
medications, both prescription and herbal, were used to control
Plaintiff's symptomology, with a range of efficacy. (AR 410, 442,
471, 487, 509, 532, 534). In May, July, and September 2015, other
than an anxious mood and a restricted and congruent affect, mental
status examinations were normal. (AR 488, 510, 533).

Plaintiff does not identify any relevant medical evidence
overlooked by the ALJ. Instead, she contends that the ALJ's
subjective symptom analysis was contrary to law. (Dkt. No. 19 at
7-9). However, as discussed above, the ALJ's analysis was
consistent with the law and supported by specific, clear, and
convincing reasons for rejecting Plaintiff's testimony.
Furthermore, the ALJ did not completely reject Plaintiff's
testimony. (AR 21-23). Indeed, partly because of Plaintiff's
subjective statements that the ALJ found credible, the ALJ rejected
Dr. Parikh's assessments and those of the State agency mental
consultants, who found that Plaintiff's mental impairments were
nonsevere. (AR 22, 23; see id. 81-82, 90-92, 349-50). Based on
Plaintiff's subjective statements, the ALJ found that Plaintiff
has moderate difficulties in social functioning and with regard to
concentration, persistence, or pace. (AR 20) (citing id. 169-77,
223) (Plaintiff's Adult Function Report and Disability Report on
appeal). The ALJ accommodated Plaintiff's moderate difficulties
in social functioning and in concentration, persistence, or pace
by restricting her to simple, repetitive tasks, involving no more
than occasional contact with coworkers and no public contact. (AR
20, 21, 23). While these limitations preclude Plaintiff from

performing any past relevant work, the VE opined that there are jobs in the national economy that Plaintiff can perform. (AR 23-25, 65-66).

In sum, the ALJ offered clear and convincing reasons, supported by substantial evidence in the record, for his adverse credibility findings. Accordingly, because substantial evidence supports the ALJ's assessment of Plaintiff's credibility, no remand is required.

## VIII.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 8, 2018

_____
            /S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS OR ANY OTHER LEGAL DATABASE.**